IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RYAN WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-15-00028-JHP |
| | ) | |
| SHERIFF KEN GOLDEN, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT SHERIFF KEN GOLDEN'S
MOTION AND BRIEF FOR SUMMARY JUDGMENT**
_____

Ambre C. Gooch, OBA No. 16586
Jordan L. Miller, OBA No. 30892
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
Facsimile:  (405) 524-2078
Email for service: gooch@czwglaw.com

ATTORNEYS FOR DEFENDANT SHERIFF
KEN GOLDEN

October 29, 2015

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii - iii

LIST OF ATTACHMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LcvR 56.1(b) STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      Plaintiff's Allegations Do Not Rise to the Level of
                Actionable Sexual Harassment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Defendant is Entitled to the Faragher/Ellerth Defense  . . . . . . . . . . . . . . . . . 11

        D.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation  . . . . . . . . . . . . 14

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITY

**CASES**                                                                          **PAGE**

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Acad. Sch. Dist. 20,* 122 Fed. Appx. 912 (10th Cir.2004) . . . . . . . . . . . . . . . . . . . 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257,
141 L.Ed.2d 633 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Campbell v. U.S. Postal Serv.*, 151 F. Supp. 2d 1284 (D. Kan. 2001) . . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 7

*Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Harsco Corp. V. Renner*, 475 F.3d 1179 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hilt v. Dyson v. City Of Chicago*, 282 F.3d 456 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187 (10th Cir.2008) . . . . . . . . . . . . . . . . . . . . . 15

*Kramer v. Wasatch Cnty. Sheriff's Office*,
743 F.3d 726 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McCrackin v. LabOne, Inc.*, 903 F. Supp. 1430 (D. Kan. 1995) . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Morris v. City of Colo. Springs,* 666 F.3d 654 (10th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir.1998) . . . . . . . . . . . . . 8, 9

*Perez v. Norwegian Am. Hosp.*, 243 F. Supp. 2d 792 (N.D. Ill. 2003)
aff'd sub nom. *Perez v. Norwegian Am. Hosp., Inc.*,
 93 F. App'x 910 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 17

*Robinson v. Cavalry Portfolio Services, LLC*,
365 Fed.Appx. 104 (10th Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464 (D. Colo. 1996) . . . . . . . . . . . . . . . . . . . 7

*Saxton v. American Telephone and Telegraph Co.*,
10 F.3d 526 (7th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schmidt v. Canadian Nat. Ry. Corp.*, 232 F. App'x 571 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . 10

*Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . 8, 11

*Stover v. Martinez*, 382 F.3d 1064 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Turnbull v. Topeka State Hosp.*, 255 F.3d 1238 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 8

*Univ. of Texas v. Nassar*, 133 S. Ct. 2517 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Weiss v. Coca–Cola Bottling Co. of Chicago*,
990 F.2d 333 (7th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

42 U.S.C. § 2000e-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

## RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

LcvR 56.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

- iii -

## <u>ATTACHMENTS TO MOTION FOR SUMMARY JUDGMENT</u>

Exhibit 1        Excerpts of the deposition of Ryan Walker taken on September 1, 2015

Exhibit 2        Anti-Discrimination Policy signed by Walker

Exhibit 3        Excerpts of the deposition of Jamie Newberry taken on October 8, 2015

Exhibit 4        Anti-Discrimination Policy signed by Miller

Exhibit 5        Excerpts of the deposition of Brad Ellis taken on October 7, 2015

Exhibit 6        March/April 2014 Manpower Schedule

Exhibit 7        Excerpts of the deposition of Sheriff Golden taken on October 7, 2015

Exhibit 8        February 5, 2014 meeting agenda and attendance form

Exhibit 9        February 26, 2014 Leave Request Form

Exhibit 10       March 20, 2014 Leave Request Form

Exhibit 11       Response to Oklahoma Employment Security Commission

Exhibit 12       Voluntary Termination form

Exhibit 13       Text messages between Walker and Ellis

Exhibit 14       *Schmidt v. CanadianRailway Corp.*

Exhibit 15       *Anderson v. Acad. Sch. Dist. 20*

Exhibit 16       *Robinson v. Cavalry Portfolio Services, LLC*

Exhibit 17       Excerpts of the deposition of Bruce Jackson taken on September 4, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

RYAN WALKER,                          )
                                      )
              Plaintiff,              )
                                      )
vs.                                   )        Case No. CIV-15-0028-JHP
                                      )
SHERIFF KEN GOLDEN,                   )
                                      )
              Defendant.              )

**DEFENDANT SHERIFF KEN GOLDEN'S
MOTION AND BRIEF FOR SUMMARY JUDGMENT**

Defendant Sheriff Ken Golden ("Golden") requests that this Court grant summary judgment in his favor as to all claims alleged against him pursuant to Fed. R. Civ. P. 56, for the reasons set forth in the following Brief:

## I.      STATEMENT OF THE CASE

This is an employment case filed under Title VII against Sheriff Golden in his Official Capacity.  Plaintiff alleges that during his employment as jailer at the Bryan County Jail, he was sexually harassed by a female co-worker, that he complained of such harassment, and was retaliated against for such complaint by being terminated.

Defendant Golden denies Plaintiff's allegations.  Defendant Golden contends that the alleged behavior about which Plaintiff complains is not actionable sexual harassment.  Further,  Defendant Golden contends Plaintiff abandoned his job when he did not report to work for his scheduled work shift on April 4-6, 2014, and upon being called and asked to report to work refused to do so.

## II.     LCvR 56.1(b) STATEMENT.

Pursuant to LCvR 56.1(b), Defendant Golden asserts that there is no genuine dispute as to the following material facts:

1.      Ryan Walker began working at the Bryan County Sheriff's Office on June 20, 2013. (See Exhibit 1, Depo. of Walker, 20:13-20:15, 37:16-37:24).

2.      Walker was interviewed by Jail Administrator John Kidman, who informed him that his job duties as a "Jailer" included booking inmates in and out of the Bryan County Jail, taking people to and from court, and feeding the inmates, among other duties.  (See Exhibit 1, Depo. of Walker, 33:2-33:18, 35:5-35:15, 37:3-37:4, 65:2-65:6).

3.      Walker received and understood the Bryan County Sheriff's Office's Anti-Discrimination Policy once hired by the Bryan County Sheriff's Office,  which required employees to make a complaint by contacting their immediate supervisor in the chain of command, the Sheriff, or the County Commissioners, and also required employees to treat their coworkers with respect and banned any discriminatory practices based on sex.  (See Exhibit 1, Depo. of Walker, 40:1-42:8; Exhibit 2, Anti-Discrimination Policy signed by Walker).

4.      Lisa Miller was hired to work  at the Bryan County Jail in November of 2013 as a Jailer, the same position as Walker.  (See Ex. 1, Depo. of Walker, 64:14-64:15, 67:4-67:8, 76:5-76:10).

5.      On November 6, 2013, Miller also signed the Anti-Discrimination Policy, which required employees to treat their coworkers with respect, and also banned any discriminatory practices based on sex.  (See Ex.  3, Depo. of Newberry, 50:14-51:4; Ex. 4, Anti-Discrimination Policy signed by Miller).

6.      Jamie Newberry also started working at the Bryan County Jail on November 11, 2013.  (See Ex. 3, Depo. of Newberry, 10:8-10:11).

7.      Once Newberry and Miller started working at the Jail in November 2013, Bradley

Ellis was never Walker's supervisor.  (See Ex. 5, Depo. of Ellis, 54:18-55:8; Ex. 6, March/April 2014 Manpower Schedule).

8.      Jamie Newberry became the new Jail Administrator at the end of January, 2014. (See Ex. 3, Depo. of Newberry, 19:10-19:13).

9.      Sometime after Newberry became Jail Administrator, Walker claims that there were several times where he was in the control room that Miller would come in and try to rub, or massage, his shoulders for a "split second" (See Ex. 1, Depo. of Walker, 67:9-67:23, 68:6-68:17, 69:14-69:25).

10.     Walker claims that there was one time that Miller "grabbed" his butt and one time that Miller "pinched" his butt while he was standing at the book-in-counter in front of the inmates. (See Ex. 1, Depo. of Walker, 67:19-67:23, 70:12-70:25, 71:23-72:25).

11.     Other than the events described in Undisputed Facts No. 9 and 10, Walker has no other claims of inappropriate or offensive contact toward him by Miller.  (See Ex. 1, Depo of Walker, 73:18-73:21).

12.     Walker claims that all of the events described in Undisputed Facts No. 9 and 10 occurred within a week or two of each other. (See Ex. 1, Depo. of Walker, 75:10-75:15, 89:1-89:9, 91:19-91:23).

13.     Walker never reported being touched inappropriately, or being sexually harassed, to Brad Ellis ("Ellis").  (See Ex. 5, Depo. of Ellis, 14:16-14:18, 14:25-15:4, 56:3-56:14).

14.     Walker never reported anything at all to Newberry.  (See Ex. 1, Depo. of Walker, 75:23-75:25; Ex.  3, Depo. of Newberry, 25:1-25:6, 26:6-26:10).

15.     Nobody ever complained to Newberry that Miller had sexually harassed Walker.

3

(See Ex. 3, Depo of Newberry, 25:7-25:10).

16.     Newberry never witnessed Miller harass, or in any way act inappropriately, with Walker.  (See Ex. 3, Depo. of Newberry, 25:11-25:24).

17.     Walker never made any complaints of sexual harassment regarding anyone else, other than himself.  (See Ex. 1, Depo. of Walker, 85:21-86:1).

18.     Walker never heard anyone complain of sexual harassment to Newberry or Sheriff Ken Golden ("Golden").  (See Ex. 1, Depo. of Walker, 86:2-86:8).

19.     Walker does not claim that he was subjected to sexual harassment by anyone other than Miller.  (See Ex. 1, Depo. of Walker, 97:23-98:1).

20.     Miller was never in Walker's supervisory chain of command.  (See Ex. 1, Depo. of Walker, 88:17-89:20).

21.     On February 5, 2014, a jail staff meeting was held, in which it was discussed that a leave request form was to be filled out in advance and turned in to "admin" (meaning the Jail Administrator) before taking time off work.  Newberry instituted this policy so that the administration could make sure that the jail staff had the appropriate time take off. (Ex. 7, Depo. of Golden, 45:6-45:18; Ex.3, Depo. of Newberry,20:2-21:21,  128:13-128:20).

22.     Walker attended that meeting and signed an acknowledgment that he had been at the meeting.  (See Exhibit 8, February 5, 2014 meeting agenda and attendance form;  Ex. 7, Depo. of Golden, 45:6-45:18; Ex. 3, Depo. of Newberry,20:2-21:7, 128:13-128:20).

23.     After the February 5, 2014 meeting, it was a requirement for jail staff to obtain Newberry's permission or approval to take leave.   (Ex. 3, Depo. of Newberry,20:2-21:7, 128:13-128:20).

4

24.     Walker understood from that meeting that "admin" was required to approve or deny the leave before he could take leave.  (See Exhibit 1, Depo. of Walker, 44:22-46:6, 48:8-48:15;50:16-51:5; Exhibit 8, February 5, 2014 meeting agenda).

25.     On February 26, 2014, Walker submitted a Leave Request form, in which he requested leave from June 3-6, 2014.  For this June 3-6, 2014 leave request, Walker followed the new procedure that had gone into effect at the February 5, 2014 meeting and obtained approval for the leave both from his supervisor and also the Jail Administrator, prior to actually taking the leave. (See Exhibit 1, Depo. of Walker, 52:21-54:17; Exhibit 9, February 26, 2014 Leave Request Form).

26.     On March 20, 2014, Walker requested leave from April 4-6, 2014. For this April 4-6, 2014 leave request, Walker did ***not*** obtain the approval of the Jail Administrator prior to taking the leave.  (See Exhibit 1, Depo. of Walker 55:4-56:7; Exhibit 10, March 20, 2014 Leave Request Form; Ex. 3, Depo. of Newberry, 23:20-24:20).

27.     Even though Walker did not obtain approval from the Jail Administrator to take leave from April 4-6 , 2014,  he took the leave anyway.  (See Exhibit 1, Depo. of Walker, 56:3-56:9).

28.     Failure to obtain approval from the Jail Administrator prior to actually taking leave was contrary to the policy that had gone into effect at the February 5, 2014 meeting. (See Exhibit 1, Depo. of Walker 55:4-56:7; Exhibit 10, March 20, 2014 Leave Request Form; Ex. 3, Depo. of Newberry, 23:20-24:20).

29.     On April 4, 2014, Walker's shift supervisor called Newberry and informed her that Walker had not shown up to work,  that Walker had not received approval to be off from work, that he had called Walker and told him he needed to return to work, and that Walker told him (Andrew Johnson) that he was not coming in to work.  (See Ex. 3, Depo. of Newberry. 22:11-23:6, 121:7-

122:1, 126:11-126:23, 189:12-18:24; Ex. 11, Response to Oklahoma Employment Security Commission).

30.     By refusing to work his scheduled shift on April 4, 2014, and refusing to come into work when called on April 4, 2014, Walker abandoned his employment for the Bryan County Sheriff's Office.  (See Exhibit 12, Voluntary Termination form; Exhibit 7, Depo. of Sheriff Ken Golden, 41:24-42:20; Exhibit 3, Depo. of Newberry, 19:25-20:1, 23:9-23:19).

31.     Walker was not terminated; he just never returned to work.  (See Ex. 3, Depo. of Newberry, 24:21-24:25).

32.     Walker admits that "no one" told him he was fired.  (See Ex. 13, Text messages between Walker and Ellis).

33.     Miller behaved the same way toward men as toward women.  Miller is a person "who had no boundaries." (See Ex. 17, Depo. of Jackson, 180:10-181:8).

## III.     ARGUMENT AND AUTHORITY.

### A.     Standard of Review.

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  The Court further held that "if the evidence is merely colorable,

or not significantly probative, summary judgment may be granted." *Id.*  In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex*, 477 U.S. at 324). *See also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464, 469 (D. Colo. 1996).  Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

**B.  Plaintiff's Allegations Do Not Rise To The Level of Actionable Sexual Harassment.**

Plaintiff alleges that he was subjected to sexual harassment by Lisa Miller in violation of Title VII.  "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs,* 666 F.3d 654, 663–64 (10th Cir.2012).   To be protected by Title VII, the behavior must have been "so objectively offensive to alter the 'conditions' of the victim's employment.*" Harsco Corp. V. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007)(internal citations omitted).  Walker cannot

7

show that the alleged harassment of him was "so objectively offensive to alter the 'conditions' of the victim's employment."

To survive summary judgment on his claim of hostile work environment sexual harassment, plaintiff must show that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998) (quotation omitted). In addition, plaintiff must show that the harassing conduct was "both objectively and subjectively abusive." *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1243 (10th Cir. 2001).

Hostile work environment harassment occurs when unwelcome sexual conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment.' The mere utterance of a statement which " 'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997)(internal quotations omitted). "We determine whether an environment is 'hostile' or 'abusive' by looking at the totality of circumstances, such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; ... whether it unreasonably interferes with an employee's work performance, and the context in which the conduct occurred." *Id.* at 1413.

Generally, mild or sporadic behavior is not considered sexual harassment. *See Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261-1263 (10th Cir. 1998) (concluding gender-based incidents occurring sporadically over a three year period were insufficient to establish a hostile work

environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-362 (7th Cir. 1998)(incidents during which a coworker allegedly touched plaintiff's arm, fingers, and buttocks were too mild and infrequent to establish a hostile work environment). Even relatively common or clearly improper behavior is often not considered sexual harassment.   *See Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 534–35 (7th Cir.1993) (placement of hand on plaintiff's leg and kissing her until she pushed away, followed three weeks later by lurching at plaintiff from behind some bushes and unsuccessfully trying to grab her, not severe enough to create hostile environment); *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 334–37 (7th Cir.1993) (supervisor repeatedly asking employee for dates, calling her a "dumb blonde," putting his hand on her shoulder, trying to kiss her, and leaving "I love you" signs in her work area not severe enough to create issue of material fact on sexual harassment claim). Moreover, where only a few isolated incidents are alleged, the conduct must be especially egregious or extreme.   *Morris v. City of Colorado Springs*, 666 F.3d 654, 667 (10th Cir. 2012); *See also Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (noting that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct").

In contrast, even where there is some mild physical contact, courts have granted summary judgment. *See Campbell v. U.S. Postal Serv.*, 151 F. Supp. 2d 1284, 1293 (D. Kan. 2001)(affirming summary judgment when supervisor touched employee's inner thigh); *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261-1263 (affirming summary judgment on plaintiff's sexual harassment claim where plaintiff complained of unwanted physical contact including supervisor touching plaintiff's shoulder on occasion, brushing against plaintiff as he passed behind her, and periodically touching plaintiff's arms or hands with his arms in a "slow and meaningful" manner); *McCrackin*

9

*v. LabOne, Inc.*, 903 F. Supp. 1430, 1433 (D. Kan. 1995)(Accepting as true employee's contention that co-worker squeezed and rubbed her shoulders, and touched her back at most total of four or five times over four-month period, co-worker's conduct did not constitute pervasive conduct of the level of severity required to create hostile or abusive work environment under Title VII); *Hilt v. Dyson v. City Of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002)(several incidents of back rubbing, although inappropriate behavior in the workplace, do not constitute sexual harassment when the rubbing was brief, and involved no threats, intimidation, or humiliation); *Perez v. Norwegian Am. Hosp*., 243 F. Supp. 2d 792 (N.D. Ill. 2003) aff'd sub nom. *Perez v. Norwegian Am. Hosp., Inc.*, 93 F. App'x 910 (7th Cir. 2004)(hospital security force sergeant was not subjected to hostile work environment when security consultant playfully struck her on buttocks); *Schmidt v. Canadian Nat. Ry. Corp*., 232 F. App'x 571, 574 (7th Cir. 2007)(where Plaintiff's shoulders were rubbed four times, this was too insignificant, even if sexual in nature, to allow a reasonable inference that Plaintiff suffered an actionable hostile work environment)(unpublished case, attached as Exhibit 14).

Here, Walker alleges at most that sometime after Newberry became Jail Administrator, there were several times where he was in the control room that Miller would come in and try to rub, or massage, his shoulders for a "split second." (See Undisputed Fact No. 9). Walker further alleges that there were one time that Miller "grabbed" his butt and one time that Miller "pinched" his butt while he was standing at the book-in-counter in front of the inmates. (See Undisputed Fact No. 10). This is the totality of the alleged sexual harassment that he experienced. Other than the events described in Undisputed Facts No. 9 and 10, Walker has no further claims of inappropriate or offensive contact toward him by Miller. (See Undisputed Fact No. 11). Walker also does not claim that he was subjected to sexual harassment by anyone other than Miller. (See Undisputed Fact No.

10

19).   Moreover, Walker claims that all of the events described in Undisputed Facts No. 9 and 10 occurred within a week or two period. (See Undisputed Fact No. 12). In over nine months of employment, this is paltry evidence of hostile work environment.      Notably, Miller behaved the same way toward men as toward women; she is a person "who had no boundaries." (See Undisputed Fact No. 33).

Even looking at the facts in the light most favorable to the Plaintiff, he simply cannot establish that he was subjected to either an objectively or subjectively hostile work environment. At most, Plaintiff simply alleges that over a period of over nine months, there was a week or two period where Miller on several occasions tried to rub his shoulders, and one or two occasions where Miller grabbed or pinched his butt.   This is the extent of this supposed harassment, over nine months.   Objectively, the environment directed at Walker was neither frequent, severe, nor threatening, not humiliating, and did not unreasonably interfere with Walker's work performance. (*See Smith,* 129 F.3d at 1412).  Walker presents no evidence of any frequent or severe conduct, nor any evidence that he was threatened, that  Miller's behavior was actually sexual rather than playful (or a "lack of boundaries"), or in any way affected the terms and conditions of his work performance.    Walker simply presents insufficient evidence to create a question of fact as to actionable sexual harassment in this suit.  This is a far cry from an environment so "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment."  *See Penry, supra.* Plaintiff's claim for sexual harassment under Title VII must be dismissed on summary judgment.

## C.       Defendant Is Entitled to the Faragher/Ellerth Defense.

Even assuming arguendo that Walker was subjected to a subjectively and objectively hostile

11

work environment by Miller, he still may not recover under Title VII. If a supervisor's harassment culminates in a "tangible employment action," the employer is strictly liable for sex discrimination, with no defense. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 762–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 [] 1998) . Here, Miller was never in Walker's supervisory chain of command.   (See Undisputed Fact No. 20).    Moreover, Walker does not claim that he was subjected to sexual harassment by anyone other than Miller.  (See Undisputed Fact No. 19)

As there is no allegation of harassment from a supervisor, Defendant thus has the opportunity to prove the defense established in the *Faragher* and *Ellerth* cases.  This defense has "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 745 (10th Cir. 2014). Furthermore, in reviewing the adequacy of the employer's remedial and preventative responses, courts will consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 676 (10th Cir. 1998).   An employer is not liable, although a perpetrator persists, so long as each response was reasonable. *Id*.

Here, Walker received and understood the Bryan County Sheriff's Office's Anti-Discrimination Policy once hired by the Bryan County Sheriff's Office,  which required employees to file a complaint by contacting their immediate supervisor in the chain of command, the Sheriff, or the County Commissioners, and also required employees to treat their coworkers with respect and

12

banned any discriminatory practices based on sex.  (See Undisputed Fact No. 3).    On November 6, 2013, Miller also signed the Anti-discrimination policy, which required employees to treat their coworkers with respect, and also banned any discriminatory practices based on sex.   (See Undisputed Fact No. 5).   Once Newberry and Miller started working at the Jail in November, 2013, Bradley Ellis ("Ellis") was never Walker's supervisor.  (See Undisputed Fact No. 7).  Moreover, even if Ellis had been his supervisor (which he was not), Walker never reported being touched inappropriately, or being sexually harassed, to Brad Ellis ("Ellis").  (See Undisputed Fact No. 13). Walker also never reported anything at all to Newberry.  (See Undisputed Fact No. 14).  In fact, nobody ever complained to Newberry that Miller had sexually harassed Walker.  (See Undisputed Fact No. 15).  Newberry also never witnessed Miller harass, or in any way act inappropriately, with Walker.  (See Undisputed Fact No. 16). Moreover, Walker never heard anyone complain of sexual harassment to Newberry or Sheriff Ken Golden ("Golden").  (See Undisputed Fact No. 18).  While Walker may attempt to dispute the fact that he did not report to Ellis, it is undisputed that Walker never followed up with Ellis about his (Walker's) report to Ellis.  (See Ex. 1, Depo. of Walker, 12:10-12:11, 73:22-74:19).

The Sheriff's Office clearly had a policy in place to prevent sexual harassment and which explained the sexual harassment complaint procedure, and Walker knew this. (See Undisputed Fact No. 3). The Sheriff's Office could not promptly correct any alleged harassment of Walker, however, because Walker never followed the Anti-Discrimination Policy to complain to the appropriate people.  Moreover, even to the extent that Walker may try to claim that he did complain to Ellis (who was not his supervisor), he admits that he never followed up with Ellis, and it is undisputed that neither Newberry nor Golden himself were ever aware of any alleged harassment by Miller

against Walker.

Walker's failure to inform anyone other than Ellis (and even this is denied) of the alleged harassment was therefore undisputably an unreasonable failure to take advantage of the preventive or corrective opportunities provided by the employer or to avoid harm otherwise.   Defendant Golden, in his official capacity, was never put on notice by Walker that any allegedly sexually hostile work environment was even occurring. As the Sheriff was admittedly unaware that Walker was allegedly undergoing a sexually hostile work environment, the Sheriff clearly did not have the opportunity to promptly correct the allegedly harassing behavior, and Walker unreasonably failed to take advantage of corrective opportunities. *See Faragher, supra*, at 778.   Thus, the *Faragher/Ellerth* affirmative defense applies to the instant case, and Defendant Golden cannot be held vicariously liable for Miller's alleged actions.   As such, Defendant Golden has proved the defense under *Faragher/Ellerth*, and is entitled to summary judgment on Walker's sexual harassment claim for this reason.

**D.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation.**

Walker also brings a claim of retaliation under Title VII.   Title VII forbids retaliation` against an employee because []he has opposed any practice made unlawful by Title VII. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004)(quoting 42 U.S.C. § 2000e-3(a)). In the absence of direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *Tabor v. Hilti, Inc*., 703 F.3d 1206, 1219 (10th Cir. 2013).   To state a prima facie case of retaliation under Title VII, Walker must show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."   *Id.*

14

Defendant Golden denies that Plaintiff can prove the first element: that he engaged in protected opposition to discrimination.  "[T]o qualify as protected opposition the employee must convey to the  employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir.2008)

To the extent Walker may allege that he spoke with Bradley Ellis (which is denied) about some of the events described in Undisputed Fact No. 9 and 10, Plaintiff makes no allegation that he "conveyed to [his] employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes].  *See Hinds, supra.*  Moreover, a vague reference to discrimination and harassment without any indication that this misconduct was motivated by sex does not constitute protected activity and will not support a retaliation claim. *Id.* at n. 13, see also *Anderson v. Acad. Sch. Dist. 20,* 122 Fed.Appx. 912, 916 (10th Cir.2004)(unpublished opinion, attached as Exhibit 15).  Complaining about isolated incidents is also not protected opposition, as no reasonable person would believe it violated discrimination statutes. *See Robinson v. Cavalry Portfolio Services, LLC,* 365 Fed.Appx. 104, 113–14 (10th Cir.2010)(unpublished opinion, attached as Exhibit 16).

Here, it is undisputed that Walker never reported anything at all to Newberry.  (See Undisputed Fact No. 14). Walker never heard anyone complain of sexual harassment to Newberry or Sheriff Ken Golden ("Golden").  (See Undisputed Fact No. 18)   While Walker may claim that he did complain to Ellis, it is undisputed that Ellis was not even Walker's supervisor.  (See Undisputed Fact No.. 7).  Walker simply fails to present evidence that he conveyed to his employer his concern that the employer had engaged in a practice made unlawful by anti-discrimination

15

statutes.

Moreover, Walker cannot establish the second element of a prima facie case, a materially adverse action.  Rather, Walker voluntarily quit his employment. He did not show up for his scheduled shift on April 4, 2014, and was requested to do so.  On February 5, 2014, a jail staff meeting was held, in which it was discussed that a leave request form was to be filled out in advance and turned in to "admin" (Newberry, the Jail Administrator) before taking time off.  Newberry instituted this policy so that the administration could make sure that the jail staff had the appropriate time off.  (See Undisputed Fact No. 21).  Walker attended that meeting and signed an acknowledgment that he had been at the meeting.  (See Undisputed Fact No. 22).  After the February 5, 2014 meeting, it was a requirement for jail staff to obtain Newberry's permission or approval to take leave.  (See Undisputed Fact No. 23). Walker understood from that meeting that "admin" was required to approve or deny the leave before he could take leave.  (See Undisputed Fact No. 24).  On February 26, 2014, Walker submitted a Leave Request form, in which he requested leave from June 3-6, 2014.  For this June 3-6, 2014 leave request, Walker followed the new procedure that had gone into effect on February 5, 2014, and obtained approval for the leave both from his supervisor, and also the Jail Administrator, prior to actually taking the leave.  (See Undisputed Fact No. 25).  On March 20, 2014, Walker  requested leave from April 4, 2014 through April 6, 2014.  For this April 4-6, 2014 leave request, Walker did *not* obtain the approval of the Jail Administrator prior to taking the leave.  (See Undisputed Fact No. 26).  Even though Walker did not obtain approval from the Jail Administrator from April 4-6, 2014, he took the leave anyway.  (See Undisputed Fact No. 27).

Failure to obtain approval from the Jail Administrator prior to actually taking leave was

16

contrary to the policy that had gone into effect at the February 5, 2014 meeting.  (See Undisputed Fact No. 28).  On April 4, 2014, Walker's shift supervisor called Newberry and informed her that Walker had not showed up to work,  that Walker had not received approval to be off from work, that he had called Walker and told him he needed to return to work, and that Walker told him (Johnson) that he was not coming in to work.  (See Undisputed Fact No. 29).  By refusing to work his scheduled shift on April 4, 2014 , and refusing to come into work when called on April 4, 2014, Walker abandoned his employment for the Bryan County Sheriff's Office.  (See Undisputed Fact No. 30).  Walker was not terminated; he just never returned to work.  (See Undisputed Fact No. 31).  Walker admits that "no one" told him he was fired.  (See Undisputed Fact No. 32).  As Plaintiff voluntarily resigned his own employment, there simply is no materially adverse action to meet the second element of a prima facie case.

As to the third element, "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under [Title 42]§ 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  Further, "an employer's action against an employee cannot be *because*  of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition*." Petersen v. Utah Dep't of Corr*., 301 F.3d 1182, 1188 (10th Cir. 2002).  Clearly, as Walker  neither engaged in protected activity, nor suffered an adverse employment action, there can be no but-for causation between the two.  Moreover, even assuming arguendo that Walker's alleged discussion with his non-supervisor Bradley Ellis was protected activity, Walker presents no evidence whatsoever that the Sheriff's Office, the employer itself, was aware of such alleged discussions.  Thus, Plaintiff certainly presents no evidence that the employer was aware that Walker had engaged in protected opposition.  For all these reasons, Plaintiff cannot

present a prima facie case of retaliation in violation of Title VII.[1]

**IV.    CONCLUSION.**

The alleged behavior about which Plaintiff complains is not actionable, sexual harassment. The instances about which Walker complains are not egregious or extreme, they are not so offensive as to alter the conditions of his employment, and they are not both objectively and subjectively abusive.  Further, Walker was not terminated; he abandoned his job and refused to come to work when scheduled and requested to do so.

For all the reasons contained herein, Defendant Sheriff Golden, in his official capacity, respectfully requests that he be granted summary judgment on all claims.

Respectfully submitted,

s/ Ambre C. Gooch
Ambre C. Gooch, OBA No. 16586
Jordan L. Miller, OBA No. 30892
COLLINS, ZORN  & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone: (405) 524-2070
Facsimile:  (405) 524-2078
Email for service: gooch@czwglaw.com

ATTORNEYS FOR DEFENDANT SHERIFF
KEN GOLDEN

---

[1]Defendant cannot establish that Plaintiff's termination was for a legitimate, nonpretextual reason, because Plaintiff *was not terminated*.  Assuming arguendo that this Court finds that Plaintiff has presented a prima facie case of retaliation, and that the events described above constitute termination (which is absolutely denied), then the termination would be for the legitimate, nonpretextual reason of Plaintiff not showing up for work when he was scheduled and requested to do so.

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James P. Hunt - via electronic mail at: jamesphunt@earthlink.net
406 S. Boulder, Suite 400
Tulsa, OK 74103

Gary Eaton - via electronic mail at: garyeatonlaw@aol.com
Eaton and Sparks
1717 East 15th Street
Tulsa, OK 74104
***Attorneys for Plaintiff***

s/ Ambre C. Gooch
Ambre C. Gooch

19